[Cite as *State v. Swindler*, 2012-Ohio-3398.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

STATE OF OHIO                                :

      Plaintiff-Appellee                       :        C.A. CASE NO. 2011CA0072

vs.                                          :        T.C. CASE NO. 11CRB2861

KRISTIN SWINDLER                             :        (Criminal Appeal from
                                                        Municipal Court)

      Defendant-Appellant                      :

· · · · · · · · ·

# O P I N I O N

**Rendered on the 27th day of July, 2012.**

· · · · · · · · ·

Elizabeth H. Smith, Atty. Reg. No. 0079180, Asst. City Prosecutor, 50 E. Columbia Street, 4th Floor, Springfield, OH 45502
      **Attorney for Plaintiff-Appellee**

Barbara A. Lahman, Atty. Reg. No. 0039156, 65 Tahlequah Trail, Springboro, OH 45066
      **Attorney for Defendant-Appellant**

· · · · · · · · ·

**GRADY, P.J.:**

{¶ 1}  Defendant Kristin Swindler appeals from her conviction, following a jury trial, for assault, R.C. 2903.13(A), a misdemeanor of the first degree.

{¶ 2}  Brandon Knipp and brothers Josh and Mike Lewis testified for the State as follows: Late on the evening of June 24, 2011, Brandon, Josh, and Mike, went to a local bar.

When the bar closed early the next morning, the three men walked to a nearby gas station to get some food before heading home. On the walk home, the men heard yelling and saw a group of four unknown people approaching. They later learned that the group included Defendant Kristin Swindler, her husband Scott, and their neighbors, Erica and Derek Shaver.

{¶ 3} When the two groups met, Scott brandished a handgun. Defendant said, "I'm about to have to turn my rings around." She then punched Brandon in the face. Erica also began hitting him. Brandon raised his arms and backed away from the women. He fell to the ground and hit his head, rendering him unconscious.

{¶ 4} Josh and Mike saw Defendant and Erica stomp on Brandon's face after he fell. Scott and Derek also began to kick Brandon. Josh ran to Brandon, trying to block the blows, while Mike ran to a nearby house for help. Defendant and Erica started to follow Mike, but when the resident opened the door, they turned away. Mike asked the resident to use his phone to call the police. The four attackers got into a car and drove away.

{¶ 5} Police and an ambulance arrived, and Brandon was taken to Miami Valley Hospital. He sustained a broken nose and other scrapes and bruises to his face, including two black eyes. He also had a cut on the back of his head that required seven staples to close.

{¶ 6} Erica testified on Defendant's behalf. She stated that during the early morning hours of June 25th, the Swindlers and the Shavers were sitting outside on a blanket drinking when they saw Brandon and his friends walking through the neighborhood. Because of recent criminal activity in the area, the two couples assumed that Brandon and his friends were the culprits and decided to confront the three men near the corner of Woodglen Lane and Lambers Lane.

{¶ 7}  Angry words were exchanged, and Brandon pointed his finger in Defendant's face.  Fearing that Brandon was going to hit Defendant, Erica punched Brandon, who hit her back.  Derek then struck Brandon, who fell to the street and appeared to be unconscious.  Erica denied kicking Brandon, though she did see Scott kick him once.

{¶ 8}  Erica testified that her primary intent was to get Defendant away from the three men.  She insisted that Defendant never struck anyone, although Defendant was hit once, when one of the men hit her in the face and knocked her down.

{¶ 9}  Defendant's twelve-year-old daughter K.S. testified that she was at a friend's house when she heard her mother yelling for help outside.  She looked out the window and saw a man lying in the street.  Two other men approached her mom on the street and hit her in the head, but she did not see her mom strike back.  Her father Scott was pulling people off of her mom and Erica.  K.S. never saw Scott hit or kick anyone, and she did not see Derek at all.  One of the men ran toward a nearby house.  Erica followed, hitting the man.  When the neighbor opened the front door, the man ran inside the house.

{¶ 10} K.S., her friend, and her friend's parents watched the altercation through the window, but none of them went outside to help, and none of them called the police.  When the police arrived, none of them talked to the police.

{¶ 11} Defendant testified that while sitting in her living room, she heard a noise in the driveway outside her Woodglen Lane home.  Defendant went out and found Brandon looking into her car windows.  She assumed he was going to break into her car.  Defendant asked Brandon what he was doing, and he punched her in the head three times, knocking her down.

{¶ 12} As Defendant yelled for help, Erica ran up and punched Brandon. He backed away, but Mike and Josh approached Defendant's driveway and started hitting Erica and Defendant, who kept falling down. Derek approached and the fight moved into the street, toward the corner of Woodglen Lane and Lambers Lane. Defendant and Erica followed, and by this time Scott was also present. Derek swung at Brandon, who fell to the ground.

{¶ 13} Defendant claimed that she did not fight back, but only tried to get Erica away from the three men. Neither she nor Scott hit anyone, although Scott did pull the three men away from the women. She further insisted that she, Erica, Derek, and Scott never kicked anyone.

{¶ 14} When Mike ran to the neighbor's house, neither Defendant nor Erica followed him. Instead, Defendant, Erica, and Derek went back to her home, while Scott went to the store to buy an ice pack. None of them called the police, and Defendant claimed not to have seen or heard the police or an ambulance on her street after the fight.

{¶ 15} Two or three weeks later, when she learned that there was a warrant for her arrest, Defendant took photos of the bruises she claimed to have sustained during the fight.

{¶ 16} A jury found Swindler guilty of assault, and the trial court sentenced her accordingly. Defendant appeals, raising three assignments of error.

{¶ 17} Defendant's first assignment of error:

"THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

{¶ 18} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or

persuasive. *State v. Hufnagle,* 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996). The proper test to apply to that inquiry is the one set forth in *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983):

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accord, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 19} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we observed:

> Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 20} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in

arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 21} Defendant was convicted of assault in violation of R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." The State's evidence demonstrates that Defendant repeatedly punched and kicked Brandon in the face, causing him to suffer from a broken nose, a cut on the back of his head that required seven staples to close, and numerous other cuts and bruises to his face, including two black eyes.

{¶ 22} Defendant contends that her conviction is against the manifest weight of the evidence because the testimony of the State's witnesses was inherently incredible and because Brandon's facial injuries were not as severe as one would expect to see of a person who was repeatedly kicked in the head. She further insists that Erica's testimony, which markedly differed from her own, was more credible than that of the State's witnesses.

{¶ 23} In resolving the discrepancies among the testimony of all of the witnesses, it is obvious that the jury believed Defendant knowingly caused physical harm to Brandon. The credibility of the witnesses and the weight to be given their testimony were matters for the trier of fact, the jury, to determine. *DeHass.* The jury did not lose its way, simply because it chose to believe the State's witnesses, which it had a right to do. *Id.*

{¶ 24} Reviewing the record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.

{¶ 25} Defendant's first assignment of error is overruled.

{¶ 26} Defendant's second assignment of error:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE DEFENDANT'S MOTION FOR MISTRIAL."

{¶ 27} Defendant's third assignment of error:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE DEFENDANT'S MOTION FOR CONTINUANCE."

{¶ 28} During the lunch recess after the conclusion of the State's case, the prosecutor learned from the investigating detective that he was in possession of videotaped interviews of Derek and Erica Shaver. The tape had been maintained in the investigatory file on the Shavers, but no copy was in the file on Defendant. The State promptly informed Defendant of the videotape, and the court extended the lunch break so that the parties could view it.

{¶ 29} After watching the tape, Defendant sought a mistrial, claiming that she could no longer call the Shavers to provide the testimony she had referred to during her opening statement. When the trial court denied the motion, Defendant requested a continuance, which the court also denied.

{¶ 30} The granting or denial of a motion for mistrial lies within the sound discretion of the trial court. *State v. Glover,* 35 Ohio St.3d 18, 517 N.E.2d 900 (1988). A mistrial need be declared only when the ends of justice so require and a fair trial is no longer possible. *State v. Franklin,* 62 Ohio St.3d 118, 580 N.E.2d 1 (1991). Similarly, a reviewing court will not disturb a trial court's decision regarding a motion for continuance absent an abuse of discretion. *State v. Powell,* 49 Ohio St.3d 255, 552 N.E.2d 191 (1990); *Ungar v. Serafite,*

376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶ 31} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 32} A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment*, Corp., 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 33} The trial court concluded that Erica and Derek were not co-defendants for purposes of Crim.R. 16, based upon earlier arguments made by Defendant when she objected that her husband Scott's statements were not admissible, because he was not a co-defendant. Thus, the videotaped interviews were not discoverable pursuant to Crim.R. 16(B)(1), which requires the State to provide a defendant with copies of "[a]ny written or recorded statement by the defendant or a co-defendant * * *."

{¶ 34} Furthermore, Defendant acknowledged that Erica and Derek were defense witnesses, not State's witnesses. Therefore, the videotaped interviews were not discoverable by Defendant pursuant to Crim.R. 16(B)(7), which requires the State to provide a defendant with copies of "[a]ny written or recorded statement by a witness in the state's case-in-chief, or

that it reasonably anticipates calling as a witness in rebuttal."

{¶ 35} Nevertheless, Defendant argues in her brief "[f]oreknowledge of the videotapes may not have benefitted the defendant, but it would have prevented her from being prejudiced by a situation where her counsel promised that both Erica and Derek Shaver would take responsibility for assaulting Knipp."

{¶ 36} Defendant offers no explanation of why the videotaped interviews prevented her from calling the Shavers to the stand, particularly since the trial court ruled that inasmuch as the videotaped interviews had not been disclosed to Defendant prior to trial, they were inadmissible, and no witness would be permitted to even refer to the existence of the tape.

{¶ 37} Additionally, defense counsel admitted that he had ample opportunity to interview both of the witnesses prior to trial, and Defendant was provided with copies of the written statements that the Shavers gave to the police. It is unclear what further information Defendant could have gathered from either witness had the trial court granted a continuance of her trial. And, in fact, although Defendant did not call Derek to the stand, she did call Erica, who provided all of the information about the altercation to which the defense had referred during opening statement.

{¶ 38} Under the particular facts and circumstances of this case, the trial court did not abuse its discretion in denying either Defendant's motion for a mistrial, or her motion for a continuance.

{¶ 39} Defendant's second and third assignments of error are overruled. The judgment of the trial court will be affirmed.

FAIN, J., And CUNNINGHAM, J., concur.

(Hon. Penelope R. Cunningham, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Elizabeth Smith, Esq.
Barbara A. Lahmann, Esq.
Hon. Thomas E. Trempe